# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Barry Price, | ) | Case No. 05-04807-TOM-13 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| Environmental Litigation Group, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 07-00017 |
| | ) | |
| D. Sims Crawford, | ) | |
| Chapter 13 Standing Trustee, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION TO STAY PROCEEDINGS

This matter came before the Court for hearing on April 9, 2007 on the Plaintiff's Motion to Stay Proceedings (the "Motion to Stay") (doc. no. 20) filed by Environmental Litigation Group, P.C. ("ELG" or the "Plaintiff"). This Court has jurisdiction under 28 U.S.C. § 1334(b). Appearing at the hearing were Romaine Scott and Meredith Lees, counsel for the Plaintiff, W. Dennis Schilling, counsel for the Trustee, Valrey Early, Bankruptcy Administrator, Tom Corbett, Chief Deputy Bankruptcy Administrator, and D. Sims Crawford, chapter 13 standing trustee (the "Trustee" or "Defendant"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has considered the pleadings and the law and finds and concludes as follows[1].

---

[1]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings pursuant to Federal

1

## A. FINDINGS OF FACT

This adversary proceeding was filed on February 5, 2007 and named D. Sims Crawford, Max C. Pope and Valrey W. Early as defendants (the "Complaint") (doc. no. 1). Identical adversary proceedings were simultaneously filed in Judge Bennett and Judge Cohen's cases (adv. proc. nos. 07-00019 and 07-00018, respectively). On February 27, 2007, the parties, in this proceeding, submitted an Agreed Motion to Dismiss Party by Stipulation (doc. no. 7) pursuant to which Max C. Pope and Valrey W. Early were dismissed as parties.

On March 7, 2007, the remaining defendant, D. Sims Crawford, filed a Motion to Dismiss (the "Motion to Dismiss") (doc. no. 9). In response, on March 12, 2007, the Plaintiff filed a Motion to Strike the Defendant's Motion to Dismiss (the "Motion to Strike") (doc. no. 12). The Motion to Dismiss and the Motion to Strike were set for hearing on March 26, 2007 and continued to April 9, 2007, by consent of the parties to allow the parties to attend mediation with respect to all issues in this proceeding and in the underlying bankruptcy cases (listed in footnote #4) (Agreed Motion to Continue Hearing, doc. no. 15). Following the mediation, which was unsuccessful, and before the April 9, 2007 hearing, the Plaintiff filed this Motion to Stay and simultaneously filed a Motion for Withdrawal of Reference to the Bankruptcy Court (the "Motion to Withdraw") and related Memorandum in Law in Support with the United States District Court for the Northern District of Alabama, Case No. CV-07-AR-0623-S (the "District Court")[2].

---

Rule of Bankruptcy Procedure 7052.

[2]Identical motions to dismiss and motions to strike are pending in the two other adversary proceedings and are set for hearing on April 24, 2007 before Judge Bennett and were set for hearing on April 11, 2007 before Judge Cohen; however, the motions in Judge Cohen's case

2

## B. BACKGROUND[3]

ELG is a law firm specializing in mass tort cases. ELG requires its potential clients to sign contingency fee contracts authorizing ELG to represent them, and entitling ELG to a percentage, typically 40%, of any amount paid by the lawsuit defendants plus expenses. Once a settlement is reached, the settlement funds are sent to ELG, ELG subtracts its attorneys' fees and costs and then ELG forwards the remaining funds to the client.

According to ELG, in December 2005, ELG became aware, for the first time, that a number of its clients had filed for chapter 13 protection without providing notice to ELG. ELG previously had dealt with clients who filed chapter 7 cases and, in those cases, ELG worked with the chapter 7 trustees to get employed as special counsel and to have its contingency fee contracts and any settlements approved by the bankruptcy courts. ELG alleges that it did not have any experience with chapter 13 cases prior to learning that some of its clients filed for chapter 13 protection, which it allegedly learned in December 2005.

Upon learning that some of its clients had filed for chapter 13 protection, ELG contacted the Defendant, the standing chapter 13 trustee, and asked him for assistance in seeking court approval of ELG's employment, of ELG's fees and expenses, and of settlements reached with

---

have since been stayed pending an outcome on this Motion to Stay and on the Motion to Withdraw pending in the District Court. Identical motions to stay were also filed in the other two adversary proceedings on April 6, 2007. The motion to stay is set for hearing on May 1, 2007 before Judge Bennett. The motion to stay in Judge Cohen's case will not be scheduled until this Court rules on this Motion to Stay and the District Court rules on the Motion to Withdraw.

[3]At the hearing on April 9, 2007, the Court took judicial notice of the pleadings in the adversary proceeding, the District Court case and the underlying bankruptcy cases (listed in footnote #4). The information contained in this section has been taken either from the pleadings or from arguments made to the Court.

3

the lawsuit defendants in the mass tort actions. There were apparently several communications (in writing and telephonically) between ELG and the Trustee and the Trustee's office. Ultimately, the Trustee directed ELG to In re Moore, 312 B.R. 902 (Bankr. N.D. Ala. 2004), to determine ELG's responsibilities. Following this, ELG contacted debtors' counsel of its clients in bankruptcy and got debtors' counsel to file applications to employ ELG[4]. The Trustee and the Bankruptcy Administrator filed objections to each of the employment applications and also began discovery. The objections argue that the applications do not support nunc pro tunc employment. Additionally, the Trustee alleges that the representations in the applications are not accurate.

A hearing on the applications to employ and objections pending in the underlying bankruptcy cases (listed in footnote #4) and on this adversary proceeding was held on April 9, 2007 at 10:30 A.M.. At the hearing, the Court was informed by Plaintiff's counsel that the

---

[4]For example, in this Court alone, ELG has filed applications to be employed in the following chapter 13 cases: (1) Adell Crawford and Catherine Crawford, Case No. 02-00099, (2) Willie Chamblin, Case No. 04-05697, (3) Willie L. Fairbanks and Annie L. Fairbanks, Case No. 05-00520, (4) Barry Price, Case No. 05-04807, (5) Cornelius May, Case No. 05-08977, (6) Lewis Carpenter, Case No. 06-00270, and (7) Eugene and Irene Bell, Case No. 06-02779. These applications were filed requesting approval "nunc pro tunc", effective as of the filing date of the chapter 13 case.

At a hearing on certain matters in the Barry Price case held on December 21, 2006, this Court instructed all parties to file all matters relating to ELG, regardless of the debtor, in the Barry Price case only. However, the Barry Price case is the only case cited above in which there is no pending application to employ to ELG.

It is this Court's understanding that both Judge Bennett and Judge Cohen have numerous similarly situated cases where ELG has filed applications to employ and the Trustee has objected to the applications. ELG stated at the hearing on April 9, 2007, that there are a total of sixty-one cases similarly situated in this District. ELG further asserted at the hearing that it was unable to get certain debtor's counsel to file applications to employ ELG; however, this Court is not aware of any instance in which this has occurred. Each of the applications to employ ELG pending before this Court was filed by debtor's counsel.

4

District Court had set the Motion to Withdraw on its motion docket scheduled for Friday, April 13, 2007. The Court, based on that information and representations by the Plaintiff and the Defendant that no witnesses would be called at a hearing on the Motion to Stay, and neither counsel having an objection, then set the Motion to Stay for 2:00 P.M. that same day, April 9, 2007. At the 2:00 P.M. hearing, counsel for the Defendant informed the Court that the Defendant, with the consent of the Plaintiff, filed a Motion to Continue Hearing in the District Court. The Motion to Continue Hearing was granted by the District Court and the Motion to Withdraw was reset for hearing on May 11, 2007.

In the Motion to Stay, the Plaintiff argues that it is appropriate to stay any proceedings relating to this adversary proceeding pending the outcome of the Motion to Withdraw. The Plaintiff further argues that staying the adversary proceeding is in the best interests of the parties, will serve judicial economy and will not unduly delay the administration of the underlying bankruptcy cases or the adversary proceedings[5].

## C. SUMMARY OF COMPLAINT[6]

In the Complaint, ELG seeks a declaratory judgment establishing the duties of debtors, chapter 13 trustees, debtors' counsel, the bankruptcy administrator[7] and ELG in liquidating mass

---

[5] The Court notes that, at the hearing, the Plaintiff, through its counsel, clarified that ELG is seeking a stay of this Court's adversary proceeding only and not seeking a stay as to the underlying bankruptcy cases or as to the employment applications and objections.

[6] To the extent the Complaint seeks a declaratory judgment on actual disputes or controversies, the Plaintiff is entitled to pursue those claims but, to the extent the Plaintiff seeks an advisory opinion where no controversy currently exists, the Plaintiff is not entitled to relief on those claims.

[7] Any prayer for relief as to the bankruptcy administrator is now moot since he was dismissed as a party.

5

tort claims. Further ELG seeks "guidance" on its requirements in representing a client with a pre-petition cause of action (subject to pre-petition contingency fee contracts) so that it may receive payment for services provided to a client who later becomes a debtor and fails to list the mass tort claim as an asset in its schedules or fails to give notice to ELG that a bankruptcy case was filed. ELG also seeks direction from the Court as to which estate is entitled to settlement proceeds where the debtor had a prior chapter 7 case but now has a an active chapter 13 case.

### D. OVERVIEW AND GENERAL DISCUSSION OF ISSUES RAISED BY THE ADVERSARY COMPLAINT

Before addressing the Motion to Stay, the Court feels it will be helpful to outline the issues raised in the Complaint, discuss the Court's understanding of the issues and to provide an overview of applicable case law.

**1.     Employment Required for Chapter 13 Debtor's Special Counsel**

At the heart of the Complaint is whether ELG, as special counsel to a chapter 13 debtor, must seek approval of its employment pursuant to section 327(e) of the Bankruptcy Code. ELG does not contest the fact that it is "special counsel" nor does it contest the fact that it must seek court approval of its fees and expenses. ELG's main contention is that it does not need to seek approval of its employment in a chapter 13 case to be eligible for an award of fees and costs.

Section 327(e) provides that the "trustee, with the court's approval, may employ, for a specified special purpose...an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). In support of its position, ELG argues that it serves as counsel to the debtor and not to the chapter 13 trustee and the plain language of section 327(e) speaks only to employment of

6

special counsel by a trustee. Therefore, ELG argues, the requirement of court approval pursuant to section 327(e) is not applicable to ELG because they serve as counsel to the debtor not the chapter 13 trustee. In analyzing this issue, one must first look at who has standing to pursue lawsuits in chapter 13 cases and thus who may employ special counsel pursuant to section 327(e) in a chapter 13 case.

2.     **Standing to Pursue Chapter 13 Debtor's Pre-Petition Lawsuits**

The courts that have considered the question of standing in the context of the right to pursue pre-petition litigation in chapter 13 cases have reached three different results: (1) the chapter 13 trustee has exclusive standing on behalf of the debtor's estate, (2) the chapter 13 trustee and debtor have concurrent standing, or (3) the chapter 13 debtor alone has standing[8]. Though this issue is not before the Court at this time (and may not be before this Court at any time should the Motion to Withdraw be granted), this Court notes that Judge Mahoney of the United States Bankruptcy Court for the Southern District of Alabama concluded that sections 541, 1302 and 1303 confer concurrent standing on the chapter 13 debtor and trustee to pursue non-bankruptcy pre-petition causes of action. Travelers Indem. Co. of Ill. v. Griner (In re Griner), 240 B.R. 432 (Bankr. S.D. Ala. 1999)[9].

---

[8] See In re Bowker, 245 B.R. 192 (Bankr. D.N.J. 2000) (contains string cite with respect to each position).

[9] See also Cable v. Ivy Tech State Coll., 200 F.3d 467 (7th Cir. 1999); Olick v. Parker & Parsely Petroleum Co., 145 F.3d 513 (2d Cir. 1998); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194 (3d Cir. 1992); Donato v. Met. Life Ins. Co., 230 B.R. 418 (N.D. Cal. 1999); In re Wirmel, 134 B.R. 258 (Bankr. S.D. Ohio 1991); In re Kutner, 3 B.R. 422 (Bankr. N.D. Tex. 1980).

7

In Griner, Judge Mahoney clearly and succinctly explains her reasoning and conclusions in determining that a chapter 13 debtor and the chapter 13 trustee have concurrent standing. In Griner, an insurance company sought to enjoin a chapter 13 debtor from pursuing a pre-petition cause of action, filed two years prior to the bankruptcy filing, alleging that only a chapter 13 trustee had standing to pursue the cause of action after the commencement of the bankruptcy case because the case was property of the estate. Id. The court reviewed the exclusive rights and powers of a chapter 13 debtor pursuant to section 1303 and the exclusive rights and powers of a chapter 13 trustee pursuant to section 1302. Id. at 435. Based on its review, the court noted that "[a]s is obvious, the list of powers in §§ 1302 and 1303 does not specifically enumerate all of the powers which might be necessary when a person is in bankruptcy for up to a five-year period. Gaps exist....What is to happen to items not specifically enumerated in sections 1302 or 1303?" Id. at 436. The court then considered the various outcomes courts have reached regarding standing, an issue not specifically addressed in sections 1302 or 1303, and held that the chapter 13 trustee and debtor concurrently hold power with respect to the right to pursue non-bankruptcy pre-petition claims[10]. Id. The court, accordingly, denied the insurance company's request for an injunction, and allowed the debtor to proceed with the pre-petition state court litigation. Id.

3. **Section 327(e) Employment and Concurrent Standing**

It seems to this Court that the issue raised by the Plaintiff really is: if both the trustee and the debtor have the right to prosecute a pre-petition cause of action, do they both have the right, and perhaps the obligation and responsibility, to seek employment of "special counsel" to

---

[10]The Griner opinion also notes and discusses how chapter 13 is different from both chapter 7 and chapter 11, but concludes that "chapter 13 is more like chapter 11", a reorganization and not a liquidation. Id. at 436.

8

prosecute the action, an asset of the bankruptcy estate, pursuant to section 327(e)[11]? If not, does this give the debtor the right to prosecute an action but not the right to hire counsel to prosecute it? This is the issue that the Plaintiff has raised.

**4.    Can the Plaintiff Receive Compensation without Obtaining Court-Approved Employment[12]?**

a)    Case Law

The next issue is whether special counsel to the debtor MUST be approved for employment as a prerequisite to seeking compensation. ELG contends that approval of employment is not required citing In re Harris, 298 B.R. 319 (Bankr. E.D. Tenn. 2003). As noted in open court, the Court finds that Harris is factually distinguishable from this controversy. The issue in Harris was whether an attorney, "special counsel" to a chapter 13 debtor, was required to obtain court approval of his employment prior to receiving compensation. Id. This, however, does not tell the whole story, the "special counsel" in the matter was an attorney who was retained by the chapter 13 debtor's bankruptcy counsel to represent the chapter 13 debtor in

---

[11]Like Judge Mahoney's discussion that notes that, although no bankruptcy section specifically authorizes a debtor to pursue such pre-petition suits, they must have that right; even though section 327(e) does not use the word "debtor," should it not be assumed that the word debtor is interchangeable with trustee given this line of cases?

[12]In the pleadings and in arguments to the Court, Plaintiff's counsel noted that the Plaintiff was concerned about the burdensome administrative responsibility placed on ELG. This burden, Plaintiff argues has two parts. First, the filing of the application to employ, which ELG asserts is time consuming. The Court notes that a large number of these applications are routinely filed on behalf of other plaintiffs firms. Second, Plaintiff's counsel asserts that ELG should not have to periodically check Pacer to see if its clients have filed for bankruptcy. While this might or might not be determined by this adversary proceeding, such action may be prudent even if not mandatory. Such periodic reviews serve two purposes: (1) they may protect ELG's client from a judicial estoppel defense in the underlying non-bankruptcy case that could defeat the entire claim, and (2) such reviews may avoid the necessity (and additional burden) of getting employment approved nunc pro tunc.

9

the bankruptcy case itself to object to a proof of claim when it became apparent that the chapter 13 attorney would have to be called as a witness and therefore could not handle the prosecution of the objection to claim. Id. The "special counsel" was not, in effect, special counsel but, rather, served as bankruptcy co-counsel in litigation in the bankruptcy court. Id. There the court held that co-counsel did not have to seek employment because court approval is not necessary for employment of a chapter 13 debtor's attorney. Id. ELG, however, is not serving as counsel to a chapter 13 debtor in the debtor's bankruptcy case making Harris inapplicable.

Following the hearing, and in support of its contention that employment is not a prerequisite to a fee award, ELG submitted In re French, 111 B.R. 391 (Bankr. N.D.N.Y. 1989) and In re Powell, 314 B.R. 567 (Bankr. N.D. Tex. 2004) for this Court's consideration. In French, special counsel to the debtor in a pre-petition matrimonial action sought fees and expenses for pre-petition and post-petition services rendered where no application to approve employment was ever filed. Id. The case originally was filed as a chapter 13 case and later converted to a chapter 7 case. Id. The court held that court-ordered employment of special counsel to a chapter 13 debtor was not a prerequisite to a fee award in a chapter 13 case because there is no reference in section 327 to chapter 13. Id. at 393. The Powell court likewise found no requirement to obtain court approval of special counsel to the debtor basing its reasoning on the fact that section 327(e) speaks only of a trustee employing special counsel. 314 B.R. at 569.

The United States Bankruptcy Court for the Southern District of Georgia has considered an application for employment in connection with a motion to approve settlement and approve compensation where the requesting attorney did not file an application to be employed with the court at the outset. In re Atkins, 2005 WL 4980279 (Bankr. S.D. Ga. 2005) (slip op.). In Atkins,

10

counsel for the debtor in a personal injury action filed a motion to settle a post-petition personal injury claim and an application for employment. Id. Neither motion was opposed by debtor's counsel or the chapter 13 trustee; however, the court took a close look at the motion and application because that particular special counsel had been subject to prior fee reductions in that court based on prior substandard legal service. Id. at *3. The court found that section 327 by its terms does not apply to attorneys hired by a chapter 13 debtor, as the section uses the word trustee only, and found that special counsel's employment therefore may not be subject to approval by the court. Id. Likewise because Rule 9019 of the Federal Rules of Bankruptcy Procedure speaks only in terms of approving settlements on the motion of a trustee, not the debtor, the court found that court approval of the settlement was not necessary. Id. The court did not definitively rule on either of this issues; however, instead finding that both were due to be approved because the statute of limitations had run and the debtor would not be able to prosecute the personal injury action if the court failed to approve the settlement and failed to approve the retention (though compensation was awarded at a much reduced rate). Id. at *5.

In another opinion in the United States Bankruptcy Court for the Southern District of Georgia, interestingly involving the same special counsel, the debtors had post-petition injuries, hired outside counsel, counsel did not seek court approval of his employment instead opting only to file a motion to approve the settlements and an application for approval of fees and costs. In re Glover, 2003 WL 23811474 (Bankr. S.D. Ga. 2003) (unpublished). The court noted that the post-petition causes of action were property of the estate pursuant to section 541, that the court had jurisdiction over property of the estate, which the debtor controlled as a chapter 13 debtor, and that the use of property of the estate to pay attorneys must be approved by the court pursuant

11

to section 327(e). Id. at *2. The court further held that though lack of prior court approval in employing an attorney representing a chapter 13 debtor justifies denial of compensation, the court could, using its equity powers, enter an order approving employment nunc pro tunc if necessitated by fundamental fairness[13]. Id. at *3. The court in Glover is clear in its requirement that non-bankruptcy counsel's employment on behalf of a chapter 13 debtor must be approved by the court. Id.

    b)    Statutory Interpretation

The two cases cited by the Plaintiff rely on the absence of the word "chapter 13" in section 327. However, section 103(a) of the Bankruptcy Code provides that "chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or **13** of this title." (emphasis added) 11 U.S.C. § 103(a).

Although there is no reference to chapter 13 in section 327, the section refers to duties of a trustee who seeks to employ other professionals. A chapter 13 trustee serves in all chapter 13 cases and if he or she seeks to retain special counsel, clearly the applicable section is section 327(e). The legislative history of section 327(e) provides: "The subsection will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." S. REP. NO. 95-989, at 38-39 (1978). The legislative history speaks of a debtor in general terms and makes no exclusion for chapter 13 debtors. Surely if Congress intended

---

[13]The court goes on to determine if nunc pro tunc employment is appropriate. Id. While nun pro tunc employment is one issue raised by the Trustee and Bankruptcy Administrator in their objections in the underlying bankruptcy cases, it is not an issue in this adversary proceeding; accordingly, no further discussion of Glover is warranted at this juncture.

12

section 327 to apply only to non-chapter 13 cases the section would clearly mandate that. Is the absence of or failure to mention chapter 13 in section 327 because it is not necessary to mention it?

This Court believes that French and Powell may be unpersuasive because the opinions seem to overlook section 103(a) and the reality that chapter 13 trustees are required to seek court approval of employment of professionals to assist the chapter 13 trustee pursuant to section 327.

**5.     Summary**

In considering whether special counsel to a debtor is required to file an application to be employed, this Court can find very little case law under section 327(e). Applications to employ special counsel to litigate pre-petition non-bankruptcy causes of action are routine, daily matters that this Court deals with and, it is this Court's belief that, the lack of case law is due to the fact that the requirement to seek court approval of employment is so basic, blatant and fundamental that it has not previously been challenged[14].

Further, accepting ELG's argument would produce some absurd results. If special counsel to the debtor is not subject to section 327(e), then there is no requirement that special counsel be disinterested or not hold an interest adverse to the debtor. Surely such a result was not intended. And, to the extent that there is a gap in failing to specifically include the word debtor in section 327(e), it would seem prudent to err on the side of caution and require special counsel to chapter 13 debtors to seek and obtain court approval of their employment as a prerequisite to awarding any fees. This precaution certainly serves the best interest of the debtor,

---

[14]Although not specifically argued at the hearing, this Court believes that the filing of applications to employ special counsel to chapter 13 debtors is routine nationwide and not a local custom as suggested in the Motion to Withdraw.

13

of special counsel, and of the trustee, and is consistent with the legislative history. The legislative history of section 329, the provision requiring debtor's attorneys or attorneys for the debtor in a case in connection with the bankruptcy case (which would include special counsel to the debtor) to file a statement of disclosure of any fee arrangements made within one year prior to the bankruptcy whether or not the attorney intends to seek an award of fees, notes that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the Bankruptcy Laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." S. REP. NO. 95-989, at 39 (1978). The legislative history shows Congress' concern that attorneys working with debtors, whether as bankruptcy counsel or other counsel, could take advantage of their non-financially savvy clients (who are already financially distressed) to the detriment of the debtor/client and the debtor's creditors. Certainly the prudent course of action, in this Court's view and in light of the legislative history, is to find that section 327(e) applies to special counsel for the trustee and for the debtor.

### E.  CONCLUSIONS OF LAW AS TO MOTION TO STAY

A bankruptcy court, as does any court, has the inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936). Incidental to this power is a court's power to stay proceedings on its own docket. Id. Thus, this Court's power to stay this proceeding is unquestioned; however, the Court has weighed the pros and cons of staying the litigation, as discussed in detail below, and finds, with the consent of the parties, that staying the

14

litigation in its entirety is not justified and will stay this proceeding, pending a decision by the District Court, as to trial only.

Pursuant to Rule 5011(c) of the Federal Rules of Bankruptcy Procedure, proceedings before this Court are not stayed when a motion to withdraw the reference is filed in the District Court unless this Court so orders. In re Perfect Home, LLC, 231 B.R. 358, 360 (Bankr. N.D. Ala. 1999), FED. R. BANKR. P. 5011. Specifically, Rule 5011(c) provides that " [t]he filing of a motion for withdrawal of a case or proceeding...shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion." FED. R. BANKR. PROC. 5011(c). The question before this Court then is whether the Court should stay the proceedings pending a decision by the District Court on the Motion to Withdraw.

Pursuant to Rule 5011, the movant bears the burden of demonstrating to this Court that a stay of the action is proper. Miller v. Vigilant Ins. Co. (In re Eagle Enter., Inc.), 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001). The inquiry in determining if a stay is proper pending a decision on the Motion to Withdraw is the same as on any motion for stay. Id. The Plaintiff must demonstrate the likelihood of prevailing on the merits in the District Court, that the Plaintiff will suffer irreparable harm if the stay is denied, that the Defendant will not be substantially harmed by the stay, and that the public interest will be served by granting the stay. Id.

1. **Likelihood of Success**

Turning to the first consideration, the likelihood that the District Court will grant Plaintiff's Motion to Withdraw, the Court notes that the Motion to Withdraw seeks only permissive withdrawal. The District Court may withdraw any case referred to this Court for

15

"cause shown." 28 U.S.C. § 157(d). "Cause" is not defined, however, the Eleventh Circuit has held that this is not an "empty requirement." Parklane Hosiery Co., Inc. v. Parklane/Atlanta Venture (In re Parklane/Atlanta Venture), 927 F.2d 532, 536 (11th Cir. 1991). In Parklane/Atlanta Venture, the Eleventh Circuit noted that other courts have determined whether cause existed by considering such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping, promoting the use of the parties' resources, and facilitating the bankruptcy process. Id.

The Plaintiff alleges that he is likely to succeed on his Motion to Withdraw because there are currently three separate adversary proceedings pending before three separate bankruptcy judges. Plaintiff argues that by granting the Motion to Withdraw, the District Court would avoid the potential for inconsistent results and would promote the use of the parties resources by only having to litigate the issues once. While this Court agrees that one trial rather than three would, at first blush, appear to promote the best use of the parties' resources and could be the basis of a finding of cause in the District Court, this Court is not convinced that that is truly the case. What the Plaintiff failed to address was the fact that in each of the three adversary proceedings the parties and the issues are identical, as are the pleadings. Discovery will be the same in all three cases and will not result in additional cost to any party by allowing discovery to proceed. While the Plaintiff asserts that withdrawal avoids the potential for inconsistent results, the Plaintiff has pointed to nothing to support its claim that there is any real potential for inconsistent results among the adversary proceedings. Bankruptcy judges deal with the employment of special counsel on a regular basis as a routine matter and are likely to reach the same conclusion.

16

Additionally, the potential for inconsistent results does not support a finding of cause, in this Court's opinion, because its ignores the fact that the Motion to Withdraw is in effect, nothing more than either forum shopping or seeking a premature appeal, and perhaps an attempt at an end run around the Bankruptcy Court.

Plaintiff's arguments could lead to abuse. On many occasions, debtors' counsel and creditors have raised issues that they were forced to raise before multiple bankruptcy court judges, leaving open the possibility that each judge may rule differently. A recent example of such a situation is where the Alabama Department of Human Resources ("DHR") asserted that domestic support obligations had to be paid in their entirety before any payments were made to other priority and administrative claims, pursuant to section 507(a)(1) (as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005), and filed objections to confirmation where attorneys' fees were proposed to be paid before paying in full any domestic support obligations. This required DHR to file objections to confirmation in numerous cases and resulted with DHR having the identical objections pending before numerous bankruptcy judges including Judge Bennett, Judge Caddell, Judge Cohen, and Judge Robinson, as well as before this Court. While this is just one such example of a routine issue raised daily in front of multiple bankruptcy courts, is an example of the potential floodgate that could be opened.

Further, even if the District Court found that it was the proper place for a trial and the District Court was therefore inclined to grant to Motion to Withdraw, this Court believes that the District Court would be inclined to follow <u>City Fire Equip. Co., Inc. v. Ansul Fire Prot. Wormuld U.S., Inc.</u>, 125 B.R. 645 (N.D. Ala. 1989), and would have this Court continue to supervise the adversary proceeding until discovery is complete, all dispositive motions have

been ruled on, and the case is ready for trial.  In City Fire, two adversary proceedings were brought to avoid alleged preferential transfers and defendants, who had not filed claims in the underlying bankruptcy case, demanded a jury trial.  Id.  The bankruptcy judge, based on the jury demand, recommended withdrawal of the reference.  Id.  The District Court held that the filing of a jury demand[15] does not cause the bankruptcy court to lose jurisdiction or mandate that the reference be withdrawn.  Id.  The District Court held that all pre-trial matters should be resolved in the bankruptcy court, including dispositive motions, until the case was ready for trial, at which point the reference should be withdrawn.  Id. at 650.

Like City Fire, the pending adversary proceeding raises purely bankruptcy issues, specifically, issues relating to the employment and compensation of professionals in a bankruptcy case or in an action that is related to the case.  These are routine matters in this Court governed by sections 103, 327, 328, 329 and 330 of the Bankruptcy Code and it is this Court's belief that such matters can be aptly handled by a bankruptcy judge in line with City Fire even if the District Court finds that the District Court is the proper place for the trial.

**2.     Potential Harm to the Parties**

At the hearing, both sides agreed that there was no harm to either party if the case was stayed only as to trial but allowed to go forward with respect to discovery and other pre-trial matters, including the filing of dispositive motions.

---

[15]At the time of City Fire, the question of whether a bankruptcy court could conduct a jury trial had not been resolved and the District Court declined to decide the issue, awaiting an authoritative appellate decision, and conducted all jury trials in the interim.  Id. at 649.

18

**3.     Public Interest**

The Plaintiff avers that the public interest will be served because ELG has an increasing number of these types of cases where ELG represents several thousand plaintiffs.  ELG argues that the issue, whether ELG must seek approval of its employment as a prerequisite to any court award of fees, is pervasive and ELG needs guidance on how to proceed.  Whether this issue is determined by the District Court or is determined by the bankruptcy court in the three pending adversary proceedings does not appear to this Court to implicate any public interest; rather, ELG's preference for having the District Court decide the matter appears to serve the interest of ELG solely.

Based on the foregoing, this Court holds that it is unlikely the Plaintiff will prevail on its Motion to Withdraw, that there is no real harm to either party in staying the litigation only as to trial, and that no public interest is at stake.  The Court finds that the Motion to Stay is due to be denied in part and granted in part.  Therefore, it is hereby

**ORDERED, ADJUDGED and DECREED** that the Motion to Stay is granted in part and denied in part, as set forth below, and it is further,

**ORDERED, ADJUDGED and DECREED** that the Motion to Stay is granted solely with respect to staying the scheduling of a trial in this adversary proceedings; and it is further,

**ORDERED, ADJUDGED and DECREED** that the adversary proceeding shall not be set for trial unless and until a final, non-appealable order has been entered with respect to the Motion to Withdraw; and it is further,

**ORDERED, ADJUDGED and DECREED** that all discovery and other pre-trial preparations are to continue in their normal course; and it is further,

**ORDERED, ADJUDGED and DECREED** that the Motion to Dismiss and Motion to Strike are re-set for hearing on May 7, 2007 at 10:30 A.M.

Dated this the 16th day of April, 2007.

                                              /s/ Tamara O. Mitchell
                                              TAMARA O. MITCHELL
                                              United States Bankruptcy Judge